UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PEDRO TORRES and JORGE HURTADO JR., individually and on behalf of other similarly situated individuals,

Plaintiffs,

vs.

NORTH PACIFIC SEAFOODS, INC., and DOES 1 THROUGH 100, inclusive,

Defendants.

Case No.:

COMPLAINT—CLASS ACTION

JURY DEMAND


Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

Plaintiffs PEDRO TORRES and JORGE HURTADO JR. ("Plaintiffs"), on behalf of themselves and others similarly situated ("the Class"), bring this action against Defendant NORTH PACIFIC SEAFOODS, INC. ("NPSI") for actual damages suffered by Plaintiffs and the Class, for penalties recoverable under the Alaska Code, and for other recovery specified herein, and allege upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record, as follows:

## I. INTRODUCTION

1. Few in the American economy are as vulnerable as seasonal workers. Far from home, often without the means to return, many have no choice but to tolerate exploitation. Congress has described seasonal workers as "the most abused of all workers in the United States." (H.R. REP. 97-885, 2, 1982 U.S.C.C.A.N. 4547, 4548.)

2. Every year, fisheries in remote areas of Alaska draw thousands of seasonal workers to seafood processing plants from other U.S. states and abroad. Each summer, North Pacific Seafoods, Inc. recruits over 800 workers from the Western United States and other locales to its processing plants in Alaska. It promises workers large paychecks and "safety for all." Benefits include habitable lodging, three meals per day, and transportation to "beautiful Alaska," all for free. This is a deception.

3. NPSI shorts workers' wages on a daily basis, requiring they clock in only after donning raingear, multiple sets of gloves, hairnets, earplugs, boots, and other safety gear and protective equipment, and clock out before removing the gear. This practice deprives those at the bottom of the wage scale of hundreds of dollars each month.

4. The free lodging NPSI advertises is unsuitable for human occupancy. Rodents infest workers' beds and bathrooms. Mold blooms throughout its buildings. Bottled water is in short supply and tap water is contaminated, foul smelling, and makes workers ill.

5. NPSI ignores basic safety rules. It fails to provide protective equipment, including protective fillet gloves, resulting in numerous injuries. Rubber aprons, soiled with blood and entrails by the end of a worker's shift, are left uncleaned and unsanitary for the next shift.



Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

Ammonia has been released in the processing room and, because the plant lacked functional detectors, workers were exposed to the harmful chemical.

6. As seasonal workers, those lured to Alaska have few options. NPSI shrugs off health and safety complaints. Those who stay face unfair wage theft, injury, and illness. Those willing to forfeit their jobs and quit risk being stranded in Alaska.

## II. FACTUAL ALLEGATIONS

### Labor Conditions in the Seafood Processing Industry

7. The Alaska seafood processing industry provides tens of thousands of jobs each year. Of the approximately 23,000 workers in the industry, 75 percent are from out-of-state. According to Alaska's Department of Labor and Workforce Development, Bristol Bay, the state's major salmon processing region, brings in more than 5,000 processing workers from outside Alaska each year.

8. Seasonal workers in Alaska's seafood industry suffer from wage theft, poor treatment and high numbers of injuries, and high attrition. A May 2020 letter from the state's Department of Labor and Workforce Development to shore-based fish processing employers identified complaints often found within the fish processing industry, including:

> "Changes to the rate of pay without the required written notice"
>
> "Payment of wages and overtime inconsistent with the Alaska Wage and Hour Act"
>
> "Nonpayment of wages for all hours worked"
>
> "Employees subjected to unlawful deductions from wages, the withholding of paychecks, or the reimbursement to employers for room and board above statutory limits and without written authorization"
>
> "Employees not being provided return transportation when the employer is required to do so."

9. Seasonal workers in the seafood processing industry suffer poor treatment by employers and are provided sub-standard living conditions. In a survey of Filipino seasonal seafood processor published in 2017 in the American Association of Occupational Health Nurses Journal of Workplace Health and Safety, 70 percent reported being treated unfairly by supervisors. In



Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

2017, Puerto Rican workers recruited to work in the Naknek plants described being enticed to Alaska, where they found "subhuman conditions" and "virtual slavery." El Nuevo Día, Puerto Rico's largest newspaper, reported on the allegations, which included having their identification taken from them upon arrival, withheld pay, dozens of injuries and illnesses treated by staff with no medical training, and such abhorrent working conditions that the governor of Puerto Rico, Ricardo Rosello Nevares, personally delivered a letter of complaint to the Governor of Alaska, Bill Walker.

10. The government of Alaska has long recognized the problem of unscrupulous employers luring seasonal workers to the state with misleading promises of exciting work and high pay. The Alaska Statutes include a unique law meant to curb fraud in bringing workers to Alaska. Section 23.10.015 specifically prohibits false representations to procure employees. In addition to granting workers a private right of action, the statute imposes a penalty on employers or their agents for inducing a worker to come to Alaska for work through:

> deceptive representations, false advertising, or false pretenses concerning the kind and character of the work to be done, or the amount and character of the compensation to be paid for the work, or the sanitary or other conditions of employment.

11. Despite the legislation, the problem persists. The Alaska Attorney General wrote an editorial for the Anchorage Daily News and Bristol Bay Times newspapers in January 2020 describing fraud to procure labor as "a hidden scourge in Alaska."

**NPSI Denies Wages for Time Donning and Doffing**

12. North Pacific Seafoods, Inc. controls approximately ten percent of the Alaska fisheries market, which itself composes five of the ten largest fisheries in the world by revenue. It operates seven seafood processing plants in Alaska, bringing in as many as 800 seasonal employees annually.

13. Each of its processing facilities use processing workers, mostly seasonal, to clean, fillet, package, freeze, and can seafood brought in by NPSI's contracted fleet. As the processing


Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

facilities are in remote areas, these workers live on-site and, especially during peak season, work long days of up to sixteen hours, seven days of the week.

14. During each shift, all workers are required by NPSI to wear certain job-related safety gear and protective equipment. The gear includes rubber aprons, rubber gloves, cotton gloves beneath the rubber gloves for warmth on the refrigerated plant floors, hair nets, ear plugs, and rain boots. These items are necessary per NPSI's own internal policy and due to the nature of the job.

15. Before clocking in, all workers spend approximately ten to fifteen minutes donning the gear. From there, workers are checked in one-by-one, requiring approximately ten minutes more. Per NPSI policy, they were not permitted to clock in until they had completed this process.

16. Per NPSI policy, workers are required to clock out upon leaving the processing room before removing any gear. By the end of a shift, the gear is soiled with blood and entrails. After clocking out, workers remove their rubber aprons and rubber gloves and place them in an area designated for cleaning. They remove and discard hair nets and ear plugs and wash their boots and cotton gloves. The process of removing the gear requires approximately ten to fifteen minutes more. Per NPSI policy, they were required to clock out before removing any of this gear.

17. Because workers were permitted to clock in only after they put these items on and clock out before removing these items, workers were not paid for 30 to 50 minutes of time spent under company control each day.

**NPSI Lures Workers to Alaska**

18. Every year, NPSI advertises employment opportunities for seasonal workers in its Alaska processing plants. Many of the statements made in these advertisements are false and deceptive.

19. Claims made on NPSI's parent company's website proved false and deceptive. NPSI is advertised as worker-centric and focused on safety. "Ensuring that [plant] workers are safe and their products are wholesome and of high quality is part of who we are as a management team."



Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

Ensuring safety for all




What is equally essential for the success of North Pacific is having a good crew of fish processing workers at each plant. While some plants operate year round and their crew members come from their local communities, other plants operate for a limited period of time handling highly seasonal products and their crews are made up of seasonal workers, who come from the "lower 48" or other countries.

Ensuring that their workers are safe and their products are wholesome and of high quality is "part of who we are as a management team," Moir said. North Pacific participates in several globally recognized audit programs including the Alaska Responsible Fisheries Management Program, Marine Stewardship Council Chain of Custody Standard, and British Retail Consortium Global Standards. These programs certify that **the company meets best practices in food safety, food quality, resource sustainability, and workplace ethics.**

Screenshot from NPSI's parent company website, Sept. 2020

Claims made in interviews on NPSI's parent company's website include:

> "What's the most important thing that we have? It's our people."
>
> – John Garner, President NPSI
>
> "I want to see my kids and the kids from the families of the people who work here have a future in this business and in this community, whether they're a harvester and a fisherman or whether they're a processing worker, or whether they're a factory manager."
>
> – Matthew Moir, NPSI Plant General Manager

20. Job listings linked from the NPSI website proved false and deceptive. As an example, a posting for the Red Salmon processing facility in Bristol Bay reads:

> "The salmon season begins in mid to late June and can last until early August. Because of this, you can work for a short amount of time and earn a LARGE PAYCHECK."
>
> "[…] you may work up to 16 hours a day, 7 days a week, with no days off. That means potential for overtime and lots of money!"
>
> "We are looking for hard-working employees who have the commitment and mindset to push through long, hard days – the return of a LARGE PAYCHECK is worth it."
>
> "Red Salmon Cannery provides:
>
> - FREE room & board to all employees who successfully complete the entire season. Housing 2 to 4 people per room.
> - FREE three meals a day and break food.



Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

- FREE personal protective equipment (PPE), such as boots, rain-gear and gloves."

21. NPSI's website makes statements that are false and deceptive. The NPSI "Employment Info" page reads:

> "[We] follow strict regulations for processing and cleanliness, including personal hygiene for each employee."
>
> "Depending on the work assignment, North Pacific Seafoods will provide work and safety clothing, such as rubber gloves, liners, aprons, hair nets, beard nets, and ear protection."

Working in the "The Last Frontier", beautiful Alaska.

Screenshot from NPSI's website, Sept. 2020

The NPSI "Red Salmon" page read:

> "Room and board (meals) are free to employees who complete the processing season. […] While the plant provides bed linens, many employees prefer to bring a sleeping bag."

22. In addition to statements on the web, NPSI representatives made false and deceptive statements in person. Workers would converge in large groups in Anchorage prior to traveling to remote facilities. There, a NPSI representative speaks to groups of workers and makes representations such as stating the dormitory lodgings are "good rooms" and "habitable space."

**NPSI Misleads Workers About the Conditions at Its Facilities**

23. Hundreds of workers arrive at NPSI processing facilities in remote areas of Alaska each year. Nearly all live in dormitory-style housing on the premises.

24. Upon seeing the conditions of the dormitory, workers realize the living conditions are not "good," "habitable," or even suitable for human occupancy. The dormitory buildings are infested with rodents. Several workers at one NPSI facility found they had to beat their mattress to scare away the mischiefs of rats that had nested inside. One entered his room to find a rat had given birth to a litter of pups and was nursing on his bed linens. Rats are a constant sight in the facility


Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

bathrooms as well, each of which is shared by up to 50 workers. Workers see visible mold blooms throughout the bedrooms and bathrooms. The musk from the mold in one facility was so strong in the bathrooms, workers held their breath while using it. Bottled water is in short supply and the commissaries, which keep short hours, sell out regularly. Water from taps is often murky, foul smelling, and tastes of fish. Several workers eventually fell ill in the summer of 2020 from what they believed was contaminated water. The dining hall in one facility smelled of raw sewage. Plant workers were told there was a leaking sewage line beneath the room's floor and that the plant was going to fix it. Nothing was ever done to address it. Some workers, made sick by the odor, simply did not eat. Supervisors had a separate dining area.





Rat pups found in bed linens at the workers' lodging, Jun. 2020



Mold spores blooming on the ceiling of the workers' bathroom, Jun. 2020

25. When they begin working on the plant floor, they find the working conditions are similarly poor, especially with regard to the manner in which supervisors disregarded worker health and safety. Workers at one facility were given a single dust mask, which they were told would serve as both a face shield from fish entrails and a COVID-19 protective mask. The free boots NPSI gives workers are prone to slipping and fill with water, prompting most workers to



Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

buy boots from on-site supply stores with advances from their pay. Workers are required to wear rubber aprons while on the plant floor. At the beginning of a shift, numerous workers found their aprons were not cleaned and were still caked with entrails from the previous shift. Workers who were assigned to filleting work at one facility were told they would be provided metal-mesh fileting gloves to prevent cuts, but the gloves were never provided. Several workers suffered lacerations on their hands and arms. The workers who were rendered ill by contaminated water were instructed to keep working – an especially difficult task given the time required to remove gloves and raingear when using the bathroom. An ammonia leak was detected in one facility only after several workers sensed the chemical irritating their eyes and lungs. They yelled to the others to get out of the plant and ran in a panic. After the exposure, workers were told there was an ammonia detector on the plant floor but it did not properly function. Supervisors give workers earplugs that they are required to wear on the plant floor. The earplugs are prone to falling from workers' ears onto the ground where they are saturated with fish blood and entrails. Supervisors have instructed the workers to put them back into their ears.

26. Workers complained about these and other unsanitary and dangerous conditions, but supervisors summarily ignored them.

27. Plaintiffs and all similarly situated employees who elect to participate in this action seek unpaid wages and overtime compensation, an equal amount in liquidated damages and prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b) of the FLSA.

28. Plaintiffs also bring this action under the Alaska Wage and Hour Act on behalf of themselves and a class of other similarly situated current and former NPSI employees who work in NPSI processing facilities in Alaska. Plaintiffs assert they and the class are entitled to unpaid wages and overtime premium wages for their work beyond 8 hours per workday and 40 hours per week, an equal amount in liquidated damages, statutory penalties, attorneys' fees, and costs pursuant to the Alaska Wage and Hour Act ("AWHA"), Alaska Statutes §§ 23.10.110 and 23.10.140.



Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

29. Furthermore, Plaintiffs bring this action on behalf of themselves and a class of other similarly situated current and former NPSI employees who were lured to Alaska through false and deceptive representations in violation of Alaska Statutes § 23.10.015 and seek all statutory penalties, actual compensatory damages, attorneys' fees, and costs pursuant to Alaska Statutes § 23.10.030.

## III. <u>JURISDICTION AND VENUE</u>

30. This action is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., and Alaska state wage and hour law for monetary relief and penalties due to NPSI's unlawful and fraudulent conduct.

31. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. The Court has supplemental jurisdiction over the state law wage and hour claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative fact.

32. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because, *inter alia*, Defendant NPSI resides in this district and because a substantial part of the events giving rise to the claims occurred in this District.

33. Defendants are subject to personal jurisdiction in the Western District of Washington because they maintain their headquarters in Seattle and transact business in this District.

## IV. <u>THE PARTIES</u>

34. Plaintiff PEDRO TORRES is, and at all relevant times was, a resident of Texas. NPSI employed Mr. Torres as salmon processor from June 2020 until July 2020. During the course of his employment, Mr. Torres frequently worked more than eight and often up to sixteen hours per day, seven days per week. While an employee of NPSI, NPSI denied Mr. Torres wages for all the hours he worked, including time spent donning and doffing the gear necessary to perform his work. Mr. Torres accepted the position with NPSI based on representations regarding the pay and living and working conditions offered at the facility. He resided in an on-site dormitory during the time he worked for NPSI. As a direct and proximate result of NPSI's conduct,


Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

described herein, Mr. Torres has suffered harm, injury, and damages in addition to being deprived of the wages, overtime, and other legal protections to which he was entitled under the FLSA and the AWHA.

35. Plaintiff JORGE HURTADO JR. is, and at all relevant times was, a resident of Washington. NPSI employed Mr. Hurtado as salmon processor from June 2020 until August 2020. During the course of his employment, Mr. Hurtado frequently worked more than eight and often up to sixteen hours per day, seven days per week. While an employee of NPSI, NPSI denied Mr. Hurtado wages for all the hours he worked, including time spent donning and doffing the gear necessary to perform his work. Mr. Hurtado accepted the position with NPSI based on representations regarding the pay and living and working conditions offered at the facility. He resided in an on-site dormitory during the time he worked for NPSI. As a direct and proximate result of NPSI's conduct, described herein, Mr. Hurtado has suffered harm, injury, and damages in addition to being deprived of the wages, overtime, and other legal protections to which he was entitled under the FLSA and the AWHA.

36. Defendant North Pacific Seafoods, Inc. is a Washington corporation with its principal place of business located at 4 Nickerson Street, Suite 400, in Seattle, Washington. It is in the business of canning and processing seafood. It was established in 1972 as a wholly owned subsidiary of Marubeni Corporation, a multi-billion-dollar Japanese company that owns more than 30 subsidiaries in the food industry (and hundreds more in other industries) worldwide.

37. The true names and capacities of DOES 1 through 100, inclusive, are unknown to Plaintiffs who sue such Defendants by use of such fictitious names. Plaintiffs will amend this complaint to add the true names when they are ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is legally responsible for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.


Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

38. At all relevant times, Defendants were and are legally responsible for all of the unlawful conduct, policies, practices, acts, and omissions as described in each and all of the foregoing paragraphs as the employer of Plaintiffs and the class members.

39. At all relevant times, the unlawful conduct against Plaintiffs and class members as described in each and all of the foregoing paragraphs was actuated, in whole or in part, by a purpose to serve Defendants. At all relevant times, upon information and belief, the unlawful conduct described in each and all of the foregoing paragraphs was reasonably foreseeable by Defendants and committed under actual or apparent authority granted by Defendants such that all of the aforementioned unlawful conduct is legally attributable to Defendants.

40. The overtime wage provisions set forth in § 206 and § 207 of the FLSA and §§ 23.10.060 and 23.10.015 of the Alaska Statutes apply to Defendants. Defendants' seafood processing jobs are not positions that fall within any exception or exemption to 29 U.S.C. § 213(a)(1) or to Sections 23.10.055 or 23.10.060 of the AWHA.

## V. COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

41. Plaintiffs seek to bring their FLSA claims on behalf of all persons who worked for NPSI as salmon processing employee from October 19, 2017 until the date of judgment.

42. Those persons whom Plaintiffs seek to represent in the FLSA Collective Action ("FLSA Collective Plaintiffs") are defined as:

> Every person who works or has worked as a seafood processing employee in the state of Alaska for North Pacific Seafoods, Inc. during the period from October 19, 2017 to the date of judgment who timely opt in to this action.

43. Plaintiffs and FLSA Collective Plaintiffs' primary responsibility as salmon processing workers was to clean, fillet, package, and can seafood. They performed all duties from Defendants' places of business at processing plants in Alaska. Plaintiffs and the FLSA Collective Plaintiffs source of compensation during their employment with NPSI was wages earned for work at NPSI facilities. Plaintiffs and the FLSA Collective Plaintiffs consistently performed substantially similar duties and were subject to the same conditions, policies, and restrictions.



Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

44. NPSI engaged in a practice of improperly denying Plaintiffs and FLSA Collective Plaintiffs wages for all hours worked, including time donning and doffing necessary gear. NPSI further denied Plaintiffs and the FLSA Collective Plaintiffs wages at a rate of 1 ½ times their regular rate of pay for hours they worked over 40 per week.

## VI. CLASS ACTION ALLEGATIONS UNDER THE ALASKA STATUTES

45. Plaintiffs bring this class action pursuant to the Federal Rules of Civil Procedure Rule 23(b)(3) and AWHA § 23.10.110(b) to recover damages and penalties under the AWHA § 23.10.060, for unpaid wages and overtime wages, on behalf of themselves and a Class of NPSI seafood processing employees who were denied wages and overtime as mandated by the AWHA and governing regulations ("AWHA Class"). This action includes all such employees whom NPSI continues to deprive of required wages and overtime in the future.

46. The AWHA Class that Plaintiffs seek to represent is composed of and defined as follows:

> Every person who works or has worked as a seafood processing employee in the state of Alaska for North Pacific Seafoods, Inc. during the period from October 19, 2018 to the date of judgment who does not timely opt out of this action.

47. Plaintiffs further bring this class action under Alaska Statutes § 23.10.015, for false representations to procure employees, on behalf of themselves and a Subclass of the AWHA Class who came to Alaska or relocated within Alaska based on false or deceptive representations, false advertising, or false pretenses concerning the kind and character of the work to be done, the amount and character of the compensation to be paid for the work, or the sanitary or other conditions of employment ("False Claims Subclass").

48. The False Claims Subclass that Plaintiffs seek to represent is composed of and defined as follows:

> Every person who changed location from one place to another in Alaska or was brought into Alaska to work as a seafood processing employee for North Pacific Seafoods, Inc. during the period from October 19, 2018 to the date of judgment who does not timely opt out of this action.

49. This action is properly brought as a class action under Federal Rules of Civil Procedure Rule 23 for the following reasons:



Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

a. Numerosity: The potential members of the AWHA Class and False Claims Subclass as defined number over 1,000 and are so numerous that joinder of all the members is impracticable.

b. Commonality: There are questions of law and fact common to Plaintiffs and the AWHA Class and False Claims Subclass that predominate over any questions affecting only individual members of the Class and Subclass. These common questions of law and fact include, without limitation:

i. Whether time the AWHA Class spent donning and doffing gear is compensable;

ii. Whether Defendants improperly withheld wages from the AWHA Class;

iii. Whether Defendants improperly withheld overtime wages from the AWHA Class;

iv. Whether Defendants used false or deceptive representations, false advertising, or false pretenses concerning the kind and character of the work to be done, the amount and character of the compensation to be paid for the work, or the sanitary or other conditions of employment;

v. Whether Defendants are liable to the AWHA Class and False Claims Subclass; and

vi. Whether the AWHA Class and False Claims Subclass can be made whole by payment of damages.

c. Typicality: Plaintiffs' claims are typical of the claims of the AWHA Class and False Claims Subclass. Plaintiffs and all members of the Class and Subclass sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of law as alleged herein.

d. Adequacy of Representation: Plaintiffs will fairly and adequately represent and protect the interests of the AWHA Class and False Claims Subclass. Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the AWHA Class and False Claims Subclass. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the AWHA


Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

Class and False Claims Subclass. Counsel who represent Plaintiffs are competent and experienced in litigating large wage and hour and other employment class actions.

e. Superiority of a Class Action: A class action is superior to other available means for fair and efficient adjudication of this controversy. Individual joinder of all class members is not practicable, and questions of law and fact common to the class predominate over any questions affecting only individual members of the class. Each class member has been damaged and is entitled to recovery by reason of Defendants' illegal policies and practices of denying wages and overtime for time workers spent donning and doffing their gear and making false and deceptive representations to lure workers to employment at NPSI processing facilities. The expense of individual litigation relative to the amount of individual recovery may be prohibitive and render it impractical for Class or Subclass members to sue Defendants for their misconduct. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

50. Plaintiffs do not anticipate any difficulty in the management of this litigation.

## VII. CAUSES OF ACTION

### First Cause of Action

### Violation of the Fair Labor Standards Act

51. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

52. Plaintiffs bring this cause of action on behalf of themselves and the FLSA Collective Plaintiffs.

53. At all relevant times, NPSI has been, and continues to be, an "employer" engaged in interstate commerce and in the production of goods for interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, NPSI has employed hundreds of employees, including Plaintiffs and the FLSA Collective Plaintiffs.



Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

54. NPSI willfully violated the FLSA by denying Plaintiffs and the FLSA Collective Plaintiffs wages for time donning and doffing gear that was a part of the workers' principle activities, was integral and indispensable to the work, and is compensable. A three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

55. Since at least October 19, 2017, NPSI has willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by denying wages and overtime from Plaintiffs and the FLSA Collective Plaintiffs, thereby failing and refusing to pay the proper hourly wage compensation to them, in accordance with § 206 and § 207 of the FLSA.

56. Because of NPSI's violations of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs have suffered damages by being denied overtime wages in accordance with § 206 and § 207 of the FLSA.

57. NPSI has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and the FLSA Collective Plaintiffs.

58. As a result of the unlawful acts of NPSI, Plaintiffs and the FLSA Collective Plaintiffs have been deprived of wages and overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, other compensation pursuant to 29 U.S.C. § 216(b), and further relief as this Court may deem just and proper.

**Second Cause of Action**

**Violation of Alaska Wage and Hour Act**

59. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 50 by reference as if set forth fully herein.

60. Plaintiffs bring this cause of action on behalf of themselves and the AWHA Class.

61. Since at least October 19, 2018, NPSI has failed to fully compensate Plaintiffs and the AWHA Class for all hours worked, thus denying them wages and overtime compensation as required under the Alaska Wage and Hour Act, § 23.10.060.



Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

62. Specifically, NPSI has failed to properly pay Plaintiffs and the AWHA Class wages for time spent donning and doffing gear prior to clocking in or after clocking out and failed to properly pay overtime compensation for time spent removing gear when this activity occurred after more than 8 hours of work in a single day or 40 hours of work in a single week.

63. Consequently, Plaintiffs and the AWHA Class have not received wages or overtime compensation that is their due. NPSI has violated the AWHA and applicable regulations.

64. Plaintiffs and the AWHA Class are entitled to recover unpaid overtime wages, liquidated damages, attorneys' fees and costs pursuant to Alaska Statutes, § 23.10.110, statutory penalties pursuant to Alaska Statutes, § 23.10.140, and further relief as this Court may deem just and proper.

**Third Cause of Action**

**False Representations to Procure Employees**

65. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 64 by reference as if set forth fully herein.

66. Plaintiffs bring this cause of action on behalf of themselves and the False Claims Subclass only.

67. At all relevant times, NPSI has done and continues to do business in the state of Alaska.

68. NPSI, through its own conduct and conduct of its agents, used false or deceptive representations, false advertisements, and false pretenses concerning the kind and character of the work to be done at its Alaska seafood processing facilities, the amount and character of the compensation to be paid for the work at its Alaska seafood processing facilities, and the sanitary or other conditions of employment at its Alaska seafood processing facilities.

69. As examples, NPSI claimed to provide workers a hygienic, safety-oriented work environment when the work environment was unnecessarily hazardous, unhealthy, and unsanitary; NPSI claimed high pay, offering specific wages and overtime for all hours worked when it actually reduced worker paychecks by denying wages and overtime for up to 30-50


Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

minutes each day; and NPSI claimed to provide workers free lodging of good quality when its dormitories were unsanitary and unsuitable for human occupancy.

70. These statements induced Plaintiffs and the False Claims Subclass to enter Alaska or relocate within Alaska to work as NPSI employees.

71. Plaintiffs and the False Claims Subclass are entitled to damages, attorneys' fees and costs pursuant to Alaska Statutes, § 23.10.030, statutory penalties pursuant to Alaska Statutes, § 23.10.0200, and further relief as this Court may deem just and proper.

## VIII. PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, the AWHA Class, and the False Claims Subclass, pray for relief and judgment against Defendant as follows:

1. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective and class action, or that the court issue such notice, to all persons who at present are or have been at any time during the past three years (FLSA Collective Plaintiffs), or two years (AWHA Class) immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised Notice, been employed by NPSI as seafood processing employees as defined herein. Such persons shall be informed that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied wages or overtime compensation;

2. That the Court determine that this action may be maintained as a collective action under 29 U.S.C. § 216(b) and as a class action under the Federal Rules of Civil Procedure Rule 23(b)(3);

3. For unpaid wages and liquidated damages pursuant to the federal Fair Labor Standards Act in an amount to be determined at trial;

4. For unpaid wages and liquidated damages pursuant to the Alaska Wage and Hour Act in an amount to be determined at trial;

5. For pre- and post-judgment interest;

6. For an award of attorneys' fees, costs, and expenses as authorized by applicable law;


Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053

7. For statutory penalties as permitted by law; and

8. For such other and further relief as this Court may deem just and proper.

## IX. DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, the AWHA Class, and the False Claims Subclass demand a trial by jury on all issues so triable.

Dated this 19th day of October, 2020.

s/ Dan Drachler
Dan Drachler, WSBA #27728
ddrachler@zsz.com
Henry Avery, WSBA #54086
havery@zsz.com
**ZWERLING, SCHACHTER & ZWERLING, LLP**
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Telephone: (206) 223-2053
Facsimile: (206) 343-9636

**THE ARNS LAW FIRM**
Robert S. Arns, *pro hac vice anticipated*
rsa@arnslaw.com
Jonathan E. Davis, *pro hac vice anticipated*
jed@arnslaw.com
Shounak S. Dharap, *pro hac vice anticipated*
ssd@arnslaw.com
515 Folsom St., 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

**ERICKSON KRAMER OSBORNE LLP**
Kevin Osborne, *pro hac vice anticipated*
kevin@eko.law
Julie Erickson, *pro hac vice anticipated*
julie@eko.law
Elizabeth Kramer, *pro hac vice anticipated*
elizabeth@eko.law
182 Howard Street

San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

***Counsel for Plaintiffs and the Proposed Class***



Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
(206) 223-2053